DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Appellant,

v.

**DSE HEALTH SYSTEMS, INC.** a/a/o **SAMANTHA SMALL,**
Appellee.

No. 4D2021-0428

[July 2, 2025]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Kathleen McHugh, Judge; L.T. Case Nos. CACE19-026656 and COCE16-002442.

Marcy Levine Aldrich and Nancy A. Copperthwaite of Akerman LLP, Miami, for appellant.

John C. Daly and Matthew C. Barber of Daly & Barber, P.A., Plantation, for appellee.

PER CURIAM.

State Farm Mutual Automobile Insurance Company appeals a final judgment for DSE Health Systems, Inc. a/a/o Samantha Small. State Farm argues the county court erred when it concluded State Farm's Insurance Policy required it to pay at least 80% of 200% of Medicare Part B's fee schedule in every instance, even when that amount is more than the amount a medical provider billed. We agree and reverse with instructions to enter judgment for State Farm.

**Background**

*i.      The No-Fault Law and State Farm's Policy*

State Farm insured Small's vehicle. Section 627.736(1), Florida Statutes (2014), as part of the Florida Motor Vehicle No-Fault Law, required that the Policy provide personal injury protection ("PIP") benefits. This included "medical expenses," defined as "reasonable expenses [incurred] for medically necessary medical, surgical, X-ray, dental, and

1

rehabilitative services . . . ." § 627.736(1)(a), Fla. Stat. (2014). The Policy defined a "reasonable charge" as:

> an amount determined by **us** to be reasonable in accordance with the **No-Fault Act**, considering one or more of the following:
>
> 1. usual and customary charges;
>    . . . .
> 5. the schedule of maximum charges in the **No-Fault Act**,

The fifth factor references section 627.736(5)(a)1., Florida Statutes (2014), and the specific subsection relevant for this case is section 627.736(5)(a)1.f.(I). That subsection provides: "For all other medical services, supplies, and care . . . [t]he insurer may limit reimbursement to 80 percent of . . . 200 percent of the allowable amount under . . . [t]he participating physicians fee schedule of Medicare Part B . . . ." If a medical provider submits a bill for less than this amount, "the insurer may pay the amount of the charge submitted." § 627.736(5)(a)5., Fla. Stat. (2014).

State Farm's Policy provided that in the event of a motor vehicle accident, State Farm would only "pay in accordance with the No-Fault Act . . . 80% of properly billed and documented medical expenses . . . ." The Policy also cited the schedule of maximum charges as an additional limit on its payouts, stating:

> *We* will limit payment of Medical Expenses . . . to 80% of a properly billed and documented *reasonable charge*, but in no event will *we* pay more than 80% of the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding polices and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:
>
> . . . .
>
> f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physicians fee schedule
of Medicare Part B . . . .

### ii.     The Insurance Claim

Small allegedly sustained injuries in a motor vehicle accident. Small went to DSE for treatment and assigned her benefits under the Policy to DSE. DSE allegedly provided chiropractic treatments to Small, including spinal manipulation and therapeutic rehab exercises, and submitted the bills to State Farm.

For each bill it received, State Farm issued an "explanation of review" demonstrating the amount that it would cover under the Policy. For instance, DSE billed $73 per unit of treatment for spinal "chiropractic manipulative treatment," classified under CPT code 98941. State Farm approved $73 for that treatment. For other treatments, State Farm often adjusted DSE's submitted amounts downward to an "approved" amount: either an amount State Farm deemed reasonable or an amount representing 200% of the relevant Medicare Part B schedule. Upon calculating the total approved amount of each bill, State Farm would further reduce the amount to 80% of that total approved amount. State Farm classified the 20% reduction as an "Amount Not Payable." State Farm paid the final total.

### iii.     The Lawsuit

DSE sent a letter to State Farm demanding State Farm pay 80% of all amounts DSE billed. State Farm refused the demand and DSE filed suit.

Ultimately, the county court granted DSE's motion for summary judgment. The county court recognized that State Farm properly elected to use the Policy's schedule of maximum charges. But the county court concluded that election had consequences:

> [B]y expressly adopting to limit reimbursement to the schedule of maximum charges, the insurer is equally bound to s. (5)(a)(5) requiring that charges submitted less than 200% be paid as submitted. Defendant must take both the good and bad of electing the schedule of maximum charges. Alternatively, Defendant must pay 80% of 200% of Medicare.

. . . .

3

> [T]he PIP statute requires [State Farm] to pay the charges as submitted when they are billed an amount less than 200% of the applicable Medicare fee schedule AND when the insurer elects the schedule of maximum charges. [State Farm] cannot have its cake and eat it too. Nor can it cherry-pick parts of the schedule it finds favorable, while ignoring those parts of the statute which may cost it more money.

Based on this conclusion, the county court entered judgment for DSE and against State Farm.

## Analysis

State Farm argues the county court erred when it interpreted the No-Fault Law to require State Farm to reimburse greater than 80% of reasonable charges, even if the medical provider charges less than the No-Fault Law's schedule of maximum charges. Two Florida Supreme Court opinions support State Farm's argument—*MRI Assocs. of Tampa, Inc. v. State Farm Mut. Auto. Ins. Co.*, 334 So. 3d 577 (Fla. 2021), and *Allstate Ins. Co. v. Revival Chiropractic, LLC*, 385 So. 3d 107 (Fla. 2024).

In *MRI Associates*, the Supreme Court held that the No-Fault Law reasonably requires "that reimbursement limitations based on the schedule of maximum charges be understood—as State Farm contends—simply as an optional method of capping reimbursements rather than an exclusive method for determining reimbursement rates." 334 So. 3d at 584-85. And in *Revival*, the Supreme Court held that an insurer may "pay 80% of the charge submitted by a medical provider, even if the charge submitted is for less than the amount reimbursable under the schedule." 385 So. 3d at 115-16.

DSE does not acknowledge these two controlling opinions in its answer brief, but concedes error "as to State Farm's policy language electing statutory billed amount . . . [and] that the Florida PIP statute does not in and of itself require an insurer to pay 100 percent of the submitted charge when the charge submitted is below the schedule of maximum charges."

Notwithstanding this concession, DSE argues that State Farm owes more to DSE than what the No-Fault Law requires. DSE notes that the No-Fault Law provides, "[i]f a provider submits a charge for an amount less than the amount allowed under [the schedule of maximum charges], the insurer may pay the amount of the charge submitted." § 627.736(5)(a)5.,

4

Fla. Stat. (2014). The Policy did not include this language. So, DSE argues, State Farm must have purposefully omitted it from the Policy and cannot now utilize that statutory option. DSE further points to State Farm's affirmative defenses, in which State Farm alleged it had elected to pay "80% of 200% of the applicable Medicare Part B . . . fee schedule" in accordance with the Policy and No-Fault Law. State Farm did not allege that it had paid the amount of the charge which DSE had submitted.

We hold that State Farm did not contractually obligate itself into paying 80% of 200% of Medicare Part B in every instance, even when that amount happens to be more than the billed charge. The Policy merely added the No-Fault Law's schedule of maximum charges as a factor to consider when determining the reasonable amount of a treatment. The Policy does not state that this or any other factor, by itself, establishes the reasonable amount. Consistent with controlling precedent from the Florida Supreme Court, State Farm was not required to pay more than 80% of the amount billed by the provider.

### Conclusion

We reverse the county court's entry of summary judgment for DSE and remand with instructions to enter judgment for State Farm.

*Reversed and remanded.*

KUNTZ, C.J., GROSS and CIKLIN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

5